IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS W. REDD,
    Plaintiff,

v.                                                                                                                 Civ. No. 01-0012 WJ/WWD

LARRY G. MASSANARI,
    Acting Commissioner of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1.    This matter comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Motion"), filed September 12, 2001 [Doc. 10]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance benefits ("SSD") and Supplemental Security Income benefits ("SSI"). Plaintiff, age 50[1], alleges a disability which commenced June 4, 1994 "due to chronic severe pain; post subdural hematoma complications; and mental problems." Mem. in Support of Pl.'s Mot. [Doc. 11] at 2. Plaintiff completed twelfth grade and has worked as a painter.

    2.    After conducting an administrative hearing and ordering a consultative examination ("CE"), the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Mr. Redd is not disabled because he can perform a wide range of light work. The ALJ further concluded that there is other work in the regional economy that Mr. Redd can perform. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that

---

    [1]    Plaintiff was 46 at the time of the ALJ's decision on January 22, 1998.

final decision pursuant to 42 U.S.C. § 405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in evaluating Mr. Redd's pain; (2) the ALJ erred in finding that Mr. Redd retains the Residual Functional Capacity ("RFC") to do light work; (3) the ALJ misconstrued or ignored the vocational expert's ("VE's") conclusions on the issue of employability; and (4) the ALJ did not properly weigh the treating physicians' opinions.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a-f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988). The first four steps of the evaluation process are not at issue in this case.

7. On June 4, 1995, Plaintiff was involved in a motor vehicle accident ("MVA") in which he was ejected from a vehicle. Tr. at 124-25. Plaintiff was admitted to University Hospital and diagnosed with a L2 burst fracture. Id. On June 8, 1994 Plaintiff underwent a L1-L3 fusion with anterior spinal instrumentation. Id. On June 14, 1995 Plaintiff was discharged from University Hospital and "transferred to Roswell Rehab for continuation of his physical therapy and speech therapy." Id. Plaintiff was admitted to the New Mexico Rehabilitation Center ("Rehab Center") in Roswell on September 11, 1995. Tr. at 213. Plaintiff was discharged from the Rehab Center on October 13, 1995. Tr. at 177. On October 30, 1995 Plaintiff was brought to the emergency room at Eastern New Mexico Medical Center ("ENMMC") because of confusion and memory trouble. Tr. at 217. Plaintiff was diagnosed with a chronic subdural hematoma and underwent a right frontotemporal craniotomy and removal of the hematoma on November 3, 1995. Id. Plaintiff was discharged from ENMMC on November 8, 1995 and was admitted to the Rehab Center the same day. Tr. at 217, 218, 315. Plaintiff was discharged from the Rehab Center on December 8, 1995. Tr. at 283.

8. Plaintiff has primarily worked in the past as a painter. Tr. at 330, 400-01. Plaintiff was not working at the time of the accident and last worked in December of 1994 as a laborer for a construction company. Id. Plaintiff told the ALJ that he looked for work after leaving the construction company and "ended up having the wreck." Tr. at 401. When asked to

explain what would keep him from working, Plaintiff replied "I'm in pain 24 hours a day." Id.

9. At step four, the ALJ determined that the Plaintiff's RFC prevented him from returning to his past work. Tr. at 29. At step five, the ALJ found that Plaintiff retained the RFC to perform light work. Tr. at 28. The ALJ determined, with the assistance of a vocational expert, that there are 31,000 jobs that Plaintiff could perform in the light work category with a sit/stand option and that Plaintiff was not disabled. Tr. at 27-29.

**First Alleged Error - Pain Evaluation**

10. The ALJ determined that Plaintiff exaggerates his allegations of pain and that his pain is moderate. Tr. at 25. The ALJ further found that Plaintiff's pain was not disabling, in that it did not reduce his RFC below the wide range of light work. See id. Plaintiff asserts that the ALJ improperly discounted the Plaintiff's subjective reports regarding the severity of his pain.

11. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." Diaz v. Sec. of Health & Hum. Serv., 898 F.2d 774, 777 (10th Cir. 1990); cited in Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). However, the ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

12. Several factors are relevant in determining the credence given to a claimant's statements of disabling pain, including the levels of medication [taken] and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other

4

witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

13. In this case, the ALJ expressly rejected Mr. Redd's credibility regarding pain for three primary reasons: 1) Mr. Redd "has good daily activities . . . and takes walks"; 2) Dr. Herrera's report indicated that Mr. Redd "was allowed to work at light levels"; and 3) there is no longitudinal medical history for the treatment of disabling pain. Tr. at 25.[2] Thus, the ALJ considered many of the factors that have been approved for purposes of evaluating pain testimony. See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991).

14. The ALJ's conclusion regarding daily activities is supported by many references to the Plaintiff's ability to independently carry out activities of daily living, do chores and ambulate without an assistive device. See Tr. at 189-89A, 191-93, 283, 286, 293. Dr. Herrera's report regarding Plaintiff's abilities is further supported by the functional capacity assessment by Dr. Romanik.

15. There is also evidence to support the ALJ's conclusion that a longitudinal medical history for the treatment of disabling pain is lacking. The record reveals that Plaintiff's attempts to seek treatment for his pain are sporadic. Moreover, while the record indicates that Plaintiff occasionally received prescriptions for pain medications, he often did not take them. Indeed, Plaintiff indicated in his hearing request statement that he was taking no medications at all. See Tr. at 120; Green v. Heckler, 803 F.2d 528 (9th Cir.1986), cited in Stordalen v. Chater, 1997 WL

---

[2] Defendant implies that the ALJ also based his credibility finding on an observation of the Plaintiff walking for over one and a half miles sometime subsequent to the hearing. See Tr. at 341. Plaintiff objects to the ALJ basing his credibility finding on such an observation. However, I need not address whether this is a proper basis for a credibility finding because I find the ALJ's decision to be substantially supported by other evidence in the record.

406758 (9th Cir. Mont) ~*from* Skaggs v. Apfel, 98-7188 (10th Cir. 9/8/99) (finding that a conservative care regimen, including over-the-counter pain medications and failure to seek regular medical treatment is not indicative of disabling pain). Furthermore, Plaintiff's use of only non-prescription medications to relieve pain is inconsistent with his allegations of disabling pain and tends to support the ALJ's credibility finding. Tr. at 406, 410 (Plaintiff's testimony that he does not take prescription medication for his pain); see, e.g., Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir.1988) (non-aggressive treatment inconsistent with severe disability allegations); Watson v. Shalala, 1994 WL 605997 (D.Kan.1994). - *from* Rice v. Apfel, 990 F.Supp. 1289, 1294 (D.Kan. 1997).

16. Accordingly, because the ALJ provided explicit and adequate reasons for his credibility determination, he did not err in finding that Plaintiff's allegations of severe pain were not credible.

**Second Alleged Error - Residual Functional Capacity**

17. Plaintiff challenges the ALJ's determination that Mr. Redd has the RFC for light work, apparently contending that such a determination is not supported by substantial evidence.

18. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Light work also requires frequent walking or standing, from one-third to two-thirds of a work day. See Social Security Ruling ("SSR") 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986). However, the worker may sit intermittently during the remaining hours of the day. See SSR 83-10. Moreover, the regulations point out that the lifting requirements of light work can be accomplished in the majority of jobs involving light work with only occasional bending and stooping. See id.

19.     Plaintiff claims that the ALJ erred when he found that Mr. Redd could perform light work because, according to Dr. Herrera, Plaintiff is limited in his ability to lift weight, crouch, reach, crawl, balance, stoop, kneel and work around machinery. See Pl.'s Mem at 6; Pl.'s Reply at 5.  However, Dr. Herrera found that Plaintiff was able to lift weight sufficient to meet the requirements for performing light work.  See Tr. at 350.  In addition, neither of the occupations described by the vocational expert as meeting the hypothetical limitations posed by the ALJ (cashier and production assembler) require more than occasional balancing, stooping, kneeling or crouching.  See excerpt from Dictionary of Occupational Titles, attached to Def.'s Resp. to Pl.'s Mot.  Nor does either position require Plaintiff to crawl or to be around moving mechanical parts. See id.  Plaintiff also asserts that the consulting examiner found that "[Plaintiff] can only occasionally . . . reach." Pl.'s Mem. at 6.  On the contrary, Dr. Herrera determined that Plaintiff's ability to reach was "not affected" by his impairment.  Tr. at 350.

20.     Plaintiff also alleges that he cannot perform light work because he is not able to sit or stand for any period of time.  See Tr. at 414 (alleging an inability to sit or stand for more than six to ten minutes).  However, substantial evidence on the record contradicts Plaintiff's allegation and supports a finding that Plaintiff's ability to sit and stand exceeds his alleged limit of six to ten minutes.[3]

21.     Finally, as noted above, the ALJ determined that Plaintiff exaggerated his complaints of pain.  Because Plaintiff asserts that his ability to sit or stand is limited due to pain,

---

[3] See Tr. at 57-64, 347-51 (reports of Dr. Romanik and Dr. Herrera finding that Plaintiff's ability to sit and stand is sufficient to meet the requirements of light work); Tr. at 87-94 (report of N. Nilberson (?) finding the same); Tr. at 198, 210, 304-05 (various notes indicating that Plaintiff can sit for up to one hour).

7

the ALJ was also entitled to discount Plaintiff's allegations to the extent he found they were based on exaggerated complaints of pain.

22. Based on the foregoing, I find that the ALJ did not err when he concluded that Plaintiff's physical limitations do not preclude him from engaging in light work.

**Third Alleged Error - Testimony of Vocational Expert ("VE")**

23. Plaintiff alleges that the ALJ did not pose proper hypothetical limitations to the vocational expert and improperly ignored the VE's testimony on cross-examination by Plaintiff's counsel.

24. The regulations provide that where a claimant must alternate sitting and standing, "a VE should be consulted to clarify the implications for the occupational base." SSR 83-12.

25. At the hearing, the ALJ asked the VE to discuss the availability of light work jobs where Plaintiff is limited to performing simple one and two step processes in a low stress environment. Tr. at 424. The ALJ then asked the VE to further limit the field to those jobs offering Plaintiff the option "to alternate between sit[ting] and stand[ing]." Tr. at 425. The VE testified that 31,000 jobs meeting these conditions were available within the region. Id.

26. On cross-examination, Plaintiff's counsel asked the VE if her testimony regarding the sit/stand hypothetical assumed that Plaintiff could alternate positions every six to ten minutes. Tr. at 426. The VE replied: "No, not really," and added that "from the observations today of the amount of position changing that [Plaintiff] has . . . required . . . [a] sitting to standing [option] would make him unemployable." Tr. at 426-27.

27. The ALJ failed to expressly address the VE's testimony that Plaintiff's behavior at the hearing would render him unemployable. However, in determining that Plaintiff was capable

8

of light work with a sit/stand option, the ALJ implicitly found that Plaintiff's behavior at the hearing was not fairly representative of "the way he acts all the time." Tr. at 427. Because the ALJ determined that Plaintiff exaggerated his allegations of pain, he did not need to accept Plaintiff's assertion that his discomfort required him to alternate sitting and standing every six to ten minutes. See supra First Alleged Error.

28.     However, the ALJ failed to make findings regarding the frequency with which Plaintiff needs to alternate sitting and standing. Nor did the ALJ or the VE indicate the frequency of position changes assumed in the hypothetical posed by the ALJ. Tr. at 425. Thus, I do not know whether sufficient jobs are available that offer the frequency of postural changes required by Plaintiff. Under these circumstances, I find that the VE's testimony failed to adequately "clarify the implications [of a sit/stand option] for the occupational base" and I recommend that this case be remanded for additional proceedings on this issue.

**Fourth Alleged Error - Opinions of Treating Physicians**

29.     Plaintiff alleges that the ALJ failed to afford proper weight to the opinions of five physicians who found that Plaintiff is disabled.[4] See Pl.'s Mem. at 7. Of these five opinions, only those of Dr. Nayak and Dr. Brown were available to the ALJ prior to his decision.[5] I will first address the opinions of Drs. Jinnah, Nelson and Jacob because their reports and letters were not submitted to the agency until after the ALJ issued his decision.

---

[4]     The five physicians who described Plaintiff as disabled are: Dr. Meenakshi Nayak, Dr. George Brown, Dr. Shehzad Jinnah, Dr. Evan Nelson, and Dr. Glen Jacob.

[5]     Dr. Jinnah rendered her opinion that Plaintiff was disabled before the ALJ issued his decision. See Tr. at 365. However, Dr. Jinnah's report was not submitted to the agency until after the ALJ issued his decision.

9

30. Regulations require the Appeals Council to consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision. See O'Dell v. Shalala, 44 F.3d, 855, 858 (10th Cir. 1994); 20 C.F.R. § 404.970(b). Evidence is "new" within the meaning of 20 C.F.R. § 404.970(b) if it is not duplicative or cumulative. Lawson v. Chater, (unpublished opinion), 83 F.3d 432, *2 (10th Cir. 1996) (citations omitted). Evidence is "material" to the determination of disability "if there is a reasonable possibility that "[it] would have changed the outcome." Id.

31. With respect to the opinions of Drs. Nelson and Jacob, I find that they do not relate to the time period for which benefits were denied. Although both physicians stated that Plaintiff began receiving care at the Chaves County Community Health Center approximately two months before the ALJ issued his decision, the letters containing their opinions are dated after the decision.[6] More importantly, the physicians' evaluations regarding Plaintiff's disability appear to be based on an assessment of the Plaintiff's condition subsequent to the ALJ's decision.[7] Thus, the Appeals Council was not required to consider this evidence in reviewing the ALJ's decision.[8] If the claimant believes his condition has deteriorated since the ALJ's decision, he may wish to file a new application. Pace. at *6; see Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985).

---

[6] Dr. Nelson wrote two letters to Plaintiff's counsel, one dated April 26, 1998 and another dated May 22, 1999. See Tr. at 380, 387. Dr. Jacob's letter to Plaintiff's counsel was dated November 3, 1999. Tr. at 390.

[7] In his April 26, 1998 letter Dr. Nelson stated that "[a] CT scan . . . was done 4/14/98 to further evaluate" Plaintiff. Tr. at 380. Dr. Jacob stated that he first saw Plaintiff on November 2, 1999, nearly two years after the ALJ issued his decision. Tr. at 390.

[8] For the same reasons, the Appeals Council was not required to consider the physical therapy reports submitted following the ALJ's decision. See Tr. at 382-83, 384.

32. Dr. Jinnah's opinion, however, was formed prior to the ALJ's decision and clearly relates to the Plaintiff's condition during the period of time for which benefits were denied. Moreover, while I find much of Dr. Jinnah's report to be duplicative, it does contain at least some new evidence. Thus, the question I must consider is whether this additional evidence is new and material such that it would have changed the Commissioner's decision had the information been available before the hearing. See Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991).

33. First, I find that this additional evidence is not entitled to much weight because Dr. Jinnah noted that Plaintiff retained her services in order "to confirm his disability." See Tr. at 365; Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (weight of evidence extremely low as it was obtained solely to aid plaintiff in pursuit of disability benefits); cmp. Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987). Secondly, there is very little new information contained in Dr. Jinnah's report. For example, Dr. Jinnah's notation that Plaintiff "could not lie down on his back because of the degree of pain" appears to be a new observation by a physician. However, it is not entirely "new" in that Plaintiff previously had expressed this complaint at his hearing. Tr. at 410. Moreover, in light of the ALJ's finding that Plaintiff exaggerates his pain, I find this evidence fails to raise the reasonable possibility of a different outcome if it had been presented to the ALJ. See Lawson v. Chater, (unpublished opinion), 83 F.3d 432, *2 (10th Cir. 1996) (citations omitted). Thus, Dr. Jinnah's opinion does not constitute material evidence to a determination of disability in this case and the ALJ did not err in failing to consider the same.

34. Next, I will address Plaintiff's allegation that the ALJ failed to give proper weight to the opinions of two of Plaintiff's treating physicians, Drs. Brown and Nayak. "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."

11

Goatcher v. Dep't of Health & Hum. Servs., 52 F.3d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.3d 508, 513 (10th Cir. 1987)). Moreover, "[a] treating physician's opinion generally is favored over that of a consulting physician." Reid v. Chater, 71 F.3d 372 (10th Cir. 1995); accord, Sorenson v. Bowen, 888 F.2d 706, 711 (10th Cir. 1989). Finally, "we have emphasized that if the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." Frey, 816 F.3d at 513 (citation and internal quotations omitted).

35. Here, the ALJ rejected the opinion of Dr. Brown that Mr. Redd is disabled due to pain and paresthesias. In doing so, the ALJ explained that Dr. Brown's opinion was contradicted by those of Drs. Herrera, Romanik and Jones.[9] Tr. at 23. The ALJ also found that Dr. Brown's report "is unsupported by the record considered as a whole." Id.

36. It is clearly within the ALJ's authority to reject physician's opinions which are unsupported by or inconsistent with other objective evidence of record. See Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994).

37. I find that the ALJ set forth specific and legitimate reasons for rejecting Dr. Brown's opinion that Plaintiff was disabled due to pain. The ALJ found Dr. Brown's opinion that Plaintiff is unable to work to be inconsistent with Dr. Herrera's opinion. After examining Plaintiff and noting his complaints of pain, Dr. Herrera found that Plaintiff "did not have straight leg raising positivity in either side in any position," "had normal knee function," and strength tested 5

---

[9] I do not agree that Dr. Brown's report necessarily contradicts that of Dr. Jones. Dr. Jones' conclusion that Mr. Redd was capable of "simple, routine work" was offered in the context of a mental residual functional capacity assessment and did not specifically address disability related to physical limitations. Tr. at 55. Dr. Brown's opinion was based on his assessment of Mr. Redd's difficulties related to his left leg. See Tr. at 326.

12

out of 5 in the upper extremities and 4 out of 5 in the lower extremities against resistance. Tr. at 349-50. Dr. Herrera concluded that Plaintiff "is probably able to lift occasionally 20-50 pounds," "can frequently lift up to 10 pounds" and that standing and sitting were not affected by his impairment. Tr. at 350. Thus, Dr. Herrera's conclusion that Plaintiff is capable of work-related activities is supported by objective evidence, while Dr. Brown's opinion that Plaintiff is disabled apparently rests on little more than a finding that the Plaintiff "has had persistent pain and paresthesias . . . and significant difficulty with his [lower left] extremity." Tr. at 326. The ALJ did not err when he rejected Dr. Brown's opinion that Plaintiff was disabled.

38. On September 21, 1995, another treating physician, Dr. Nayak, opined that "[b]ecause of his cognitive impairment, I feel that [Mr. Redd] is disabled and will be unable to work." Tr. at 211. Dr. Nayak apparently based this conclusion on the results of a cognitive evaluation that revealed "moderate to severe cognitive deficits" and "severely impaired thought organization skills, verbal reasoning and sequencing skills." Tr. at 210. On November 21, 1995, Dr. Nayak adopted the findings of other rehabilitation team members[10] that Mr. Redd "exhibits difficulty in processing information, as well as processing speed, reasoning abilities, logical sequencing, planning and execution, and visual auditory learning." Tr. at 312. Dr. Nayak also noted that Mr. Redd "does not seem to understand what the goals are and the purpose of staying [at the Rehab Center]." Id. On November 28, 1995, Dr. Nayak agreed that Mr. Redd "continues to have behavior, memory and reasoning problems" and "does not appear to be making any cognitive gains." Tr. at 309-10.

---

[10] Dr. Nayak was the Medical Director of the New Mexico Rehabilitation Center team providing rehabilitative services to Mr. Redd and signed team conference evaluations in that capacity.

39. In determining that Mr. Redd was capable of simple, routine work despite his mental impairment, the ALJ apparently relied on the opinion of an agency reviewer, Dr. Carole Jones. See Tr. at 22. However, Dr. Jones failed to reference Dr. Nayak's contradictory opinion that Mr. Redd was unable to work, even though she was instructed to "[b]e especially careful to explain conclusions that differ from those of treating medical sources." Tr. at 55.

40. In this case, it is unclear whether the ALJ and Dr. Jones failed to consider Dr. Nayak's opinion that Plaintiff was disabled, or considered and rejected the same. Nevertheless, it is error if the ALJ does not consider the opinion of a claimant's treating physician and/or fails to provide specific, legitimate reasons for disregarding that opinion. Accordingly, this case should be remanded for additional proceedings with regard to the assessment of Plaintiff's mental residual functional capacity, in light of the opinion of Dr. Nayak.

## Recommended Findings and Disposition

41. Based on the foregoing, I find that substantial evidence supports the ALJ's conclusion that Plaintiff's pain is not disabling and recommend that his determination on this issue be **affirmed**.

42. I also find that the ALJ's determination that Plaintiff is physically capable of performing work within the wide range of light work is supported by substantial evidence and recommend that his decision on this issue be **affirmed**.

43. Additionally, I find that the ALJ applied incorrect legal standards by failing to consider and/or by failing to give specific, legitimate reasons for disregarding Dr. Nayak's opinion that Mr. Redd was disabled due to his cognitive impairments. This error potentially affects the ALJ's conclusions regarding the limits on Mr. Redd's ability to do light work and the testimony of

14

the vocational expert. Accordingly, I recommend that Plaintiff's Motion be **granted**, and that this matter be **remanded** to the Commissioner for additional proceedings to include:

    A.    Reassessment of Plaintiff's mental residual functional capacity, in light of the opinion of his treating physician, Dr. Nayak, regarding Plaintiff's cognitive limitations; and

    B.    Determination of whether Plaintiff is disabled, in light of the findings resulting from the reassessment of Plaintiff's mental residual functional capacity; and

    C.    If the Commissioner determines that Plaintiff is not disabled, presentation of appropriate hypothetical questions to a vocational expert, taking into consideration any additional or changed findings resulting from the reassessment of Plaintiff's mental residual functional capacity.

44.    I further recommend that this matter be **remanded** to the Commissioner for additional proceedings, regarding the availability of jobs in the light work category with a sit/stand option. These proceedings should include:

    A.    Findings of fact with respect to Plaintiff's need to alternate sitting and standing; and

    B.    The presentation of appropriate hypothetical questions to a vocational expert regarding the frequency of postural changes required by Plaintiff, in addition to any other applicable restrictions or limitations.

Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE